UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| | |
|---|---|
| Case No. 2:24-cv-10980-MCS-AGR | Date February 18, 2025 |
| Title *Ballack v. S.E. Combined Servs. of Cal., Inc.* | |

Present: The Honorable  Mark C. Scarsi, United States District Judge

| Stephen Montes Kerr | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** (IN CHAMBERS) ORDER RE: MOTION TO REMAND (ECF NO. 10) (JS-6)

Plaintiff Marykay Ballack brought this putative wage and hour class action against her former employer, Defendant S.E. Combined Services of California, Inc., doing business as Chapel of the Roses, in the San Luis Obispo County Superior Court, and Defendant removed it to this Court. (*See generally* Notice of Removal, ECF No. 1; Compl., ECF No. 1-1.) Plaintiff moves to remand. (Mot., ECF No. 10.) The motion is fully briefed. (Opp'n, ECF No. 12;[1] Reply, ECF No. 13.) The Court deems the motion appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. R. 7-15.

## I.  BACKGROUND

According to the complaint, Plaintiff is a California resident who worked for Defendant as a nonexempt employee. (Compl. ¶ 10.) Plaintiff alleges Defendant violated various California labor laws, asserting seven claims: (1) failure to provide meal periods and rest breaks, Cal. Lab. Code § 226.7; (2) failure to pay overtime and

---

[1] The Court considers Defendant's brief even though it was untimely. (Initial Standing Order § 9(b), ECF No. 7.)

minimum wages, *id.* § 1194; (3) failure to indemnify business expenses, *id.* § 2802; (4) failure to keep accurate records, *id.* § 226; (5) failure to pay final wages at termination, *id.* §§ 201–04; (6) violation of the California Private Attorneys General Act of 2004 ("PAGA"), and (7) violation of the California Unfair Competition Law ("UCL"). (Compl ¶¶ 27–81.) Plaintiff seeks to represent a class and various subclasses of people who worked for Defendant in California as nonexempt employees since October 9, 2020, and she brings her PAGA claim as a representative action. (*See id.* ¶¶ 5, 15–26.)

## II.   LEGAL STANDARD

"Federal courts are courts of limited jurisdiction" and "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A defendant may remove an action to federal court if the federal court could exercise original jurisdiction over the action. 28 U.S.C. § 1441(a). If a defendant fails to meet its burden of establishing subject-matter jurisdiction, the suit must be remanded. *Id.* § 1447(c).

The Class Action Fairness Act of 2005 ("CAFA") provides federal subject-matter jurisdiction if (1) the proposed plaintiff class is not less than 100 members, (2) the parties are minimally diverse, and (3) the aggregate amount in controversy exceeds $5 million. *Id.* § 1332(d)(2), (5)(B). "Congress intended CAFA to be interpreted expansively." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (citing S. Rep. No. 109-14, at 42 (Feb. 28, 2005)). Although "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court," *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014), the removing party still bears the burden of establishing federal jurisdiction, *see Washington v. Chimei Innolux Corp.*, 659 F.3d 842, 847 (9th Cir. 2011) ("The burden of establishing removal jurisdiction, even in CAFA cases, lies with the defendant seeking removal.").

Where the amount in controversy is not apparent from the face of the complaint, the removing party is "required to show the amount in controversy by a preponderance of the evidence." *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 994 (9th Cir. 2022); *accord Abrego v. Dow Chem. Co.*, 443 F.3d 676, 683 (9th Cir. 2006). Generally, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," but where a plaintiff contests the amount in controversy put forth by the defendant, "[e]vidence establishing the amount is required." *Dart Cherokee Basin*,

574 U.S. at 89. The parties, thus, "may submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Ibarra*, 775 F.3d at 1197 (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)). "Under this system, a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Id.*

### III. DISCUSSION

Plaintiff questions whether the CAFA amount-in-controversy threshold is satisfied, arguing that Defendant's estimates in the notice of removal rely upon implausible, unwarranted assumptions about its potential liability. (Mot. 3–9.) The Court agrees. The amount in controversy is not clear from the face of the complaint. (*See generally* Compl.) Defendant, revising its estimates in response to the motion, submits that Plaintiff's claims place approximately $5–7 million in controversy. (Opp'n 4–9.) Defendant's evidence to support its estimates of the amount placed in controversy by Plaintiff's claims rests on speculation and conjecture, which does not suffice to meet its burden to show jurisdiction lies in this Court.

#### A.   Objections to Evidence

As a threshold issue, Plaintiff objects to the declaration of counsel and supporting exhibits, which Defendants submitted with the opposition brief and upon which Defendants largely rest their amount-in-controversy calculations. (Objs., ECF No. 13-1.) While Defendant correctly notes that a declaration may suffice to meet an amount-in-controversy challenge, (Opp'n 4 (citing *Ibarra*, 775 F.3d at 1197)), the declaration Defendant offers here does not. The declarant, Defendant's attorney of record, does not appropriately establish the basis for her personal knowledge of the facts she articulates, providing merely that she "reviewed documents from Defendant." (Francis Opp'n Decl. ¶ 2, ECF No. 12-1.) The declarant does not state what she reviewed and whether the reviewed materials provide her with personal knowledge of her client's employee data. *See* Fed. R. Evid. 602. Nor does the declarant properly authenticate the exhibits. (*See* Francis Opp'n Decl. ¶¶ 3, 6, 8.) The exhibits appear to be printouts of spreadsheets that are undated, untitled, and presented with no context about who prepared them, how they were prepared, and from what data they were prepared. (*Id.* Exs. 1–3, ECF No. 12-1.) The Court is left to guess whether they accurately reflect Defendant's employee records. *See* Fed. R. Evid. 901(a).

Similar issues plague the declaration of counsel submitted with the notice of removal, which reports hearsay information obtained from Defendant's records, of which the declarant fails to establish personal knowledge. (*See* Francis Removal Decl. ¶ 2, ECF No. 1-6 (averring she "received documents from Defendant" without providing any indicia that she reviewed them or that they accurately reflect Defendant's business records).) *See* Fed. Rs. Evid. 602, 801–02.

For these reasons, the Court sustains Plaintiff's objections and declines to credit any of Defendant's evidence. *Cf. Blossom v. Waldorf Astoria Emp., LLC*, No. 2:23-cv-10510-MCS-PVC, 2024 U.S. Dist. LEXIS 29719, at *7 (C.D. Cal. Feb. 21, 2024) (Scarsi, J.) (declining to credit declaration of counsel, as counsel had "not provided enough information from which the Court can confirm her personal knowledge of the information provided, especially given that her declaration is worded such that it is unclear whether she personally reviewed the records she summarizes"). Because Defendant presents no competent evidence to meet Plaintiff's challenge, the motion must be granted. *Dart Cherokee Basin*, 574 U.S. at 89.

Notwithstanding, for completeness, the Court evaluates Defendant's position as if its evidence had weight and still finds its burden unmet.

### B.    Meal and Rest Break Claim

At removal, Defendant estimated the first claim for meal and rest break violations places $1,106,560.00 in controversy, based on an estimated $14 in damages per violation at a rate of one meal or rest break violation per week for 208 weeks for each of 380 class members. (Notice of Removal ¶ 28.) Plaintiff persuasively notes that Defendant's initial estimate unreasonably assumed every employee in the putative class worked for the entire class period, but Defendant did not employ many of the class members, including Plaintiff herself, for the entire class period. (Mot. 3–4.) In response to the motion, Defendant proffered a new calculation of $979,968.00 based on a classwide average hourly rate of $19.14 and an estimated class size of 360, which consists of about 200 former employees who worked for Defendant for 80 weeks on average, and 160 current employees who have worked for Defendant for 220 weeks on average. (Francis Opp'n Decl. ¶¶ 3–7, 10 & Ex. A.) The new calculation features several glaring problems: it rests on a class size of 360 when Defendant has identified only 358 potential class members, (*id.* ¶ 5); it assumes an average hourly wage of $19.14 based on the wages of only 356 of those potential class members, (*see id.* Ex. C (taking average of 356 entries));

it assumes that the average hourly wage of current employees is equal to that of former employees, (*see id.* ¶ 8); it assumes an average number of workweeks for former employees that includes time those former employees worked for Defendant outside the class period, (*see id.* Ex. B (including in calculation an employee who worked 1,926.4 workweeks between 1987 and 2024));[2] and it apparently pulls from thin air the average number of workweeks for current employees, a number suspiciously commensurate with the number of weeks between the beginning of the class period and removal, (*id.* ¶ 7; *see* Reply 2–3). The Court cannot provide an alternative calculation given the gaps in the (already inadmissible) evidence in the record. Moreover, both sides assume a violation rate of once per week without any support in the record. (Mot. 7; Francis Opp'n Decl. ¶ 10.) That rate "cannot reasonably be inferred from Plaintiff's (admittedly conclusory) allegations," *Blossom*, 2024 U.S. Dist. LEXIS 29719, at *11—here, that Defendant "regularly" failed to provide meal periods and rest breaks, (Compl. ¶ 29). *Cf. Marshall v. G2 Secure Staff, LLC*, No. 2:14-cv-04322-ODW (MANx), 2014 U.S. Dist. LEXIS 95620, at *8 (C.D. Cal. July 14, 2014) ("'[C]onsistently' does not necessarily amount to once per week. Some regularity can be discerned, but without further support, there is no justification for using a once-per-week rubric versus a twice-per-month rubric or a three-times-per-year rubric.").

Defendant's estimates of the value of this claim are too speculative to be adopted, so the Court accepts Plaintiff's invitation to assign them a value of $0. (Mot. 3.)

### C. Overtime and Minimum Wages Claim

Upon removal, Defendant estimated Plaintiff's second claim for unpaid overtime and minimum wages places $2,766,400.00 in controversy, consisting of $1,106,560.00 on the minimum wage component and $1,659,840.00 on the overtime component. (Notice of Removal ¶ 28.) Defendant reached these sums by assuming one minimum wage and one overtime violation per week for each of 380 class members. (*Id.*) Again, Defendant revised its calculations in response to the motion to $2,449,920.00, $979,968.00 on the minimum wage component and $1,469,952.00 on the overtime component. (Francis Opp'n Decl. ¶¶ 11–12.) And yet again, Defendant's estimates rest on the same unfounded assumptions regarding the

---

[2] Curiously, Exhibit B reports the average number of workweeks for former employees as 224.44, not 80. The Court is unsure how counsel derived the 80-week average for former employees.

putative class's size, average wage, weeks worked in the class period, and violation rate discussed in relation to the meal and rest break claim. *See Blossom*, 2024 U.S. Dist. LEXIS 29719, at *8–9 (declining to credit assumption of one-hour-per-workweek rate of minimum wage violations "in the absence of supporting evidence or allegations"). Notably, Defendant fails to justify why the estimated violation rate between the minimum wage and overtime components should be equal, as "the violation rate should be lower overall for the overtime claim compared with the minimum wage claim given that the overtime violation rate for part-time employees logically should be lower than the minimum wage violation rate." *Id.* at *10.

Defendant again having failed to justify its assumptions toward its estimate, the Court values this claim too at $0.

### D. Other Claims and Attorney's Fees

In response to the motion, Defendant submits to Plaintiff's estimate of the amount placed in controversy by the third claim, (Opp'n 4), and the parties agree on the estimated value of the fourth and fifth claims, (Mot. 8). Notwithstanding qualms identified above that may be equally applicable to the parties' calculations as to these claims, the Court accepts the parties' estimates given their agreement. Together, the three claims place an estimated $640,251.75 in controversy. No party has estimated the value of the sixth and seventh claims, so the Court assumes they do not place any more in controversy than the first five claims. (*See* Mot. 8.)

Defendant argues that the Court can assume without any supporting evidence that attorney's fees in a wage and hour class action may be valued at 25–33 percent of the projected damages. (*See* Opp'n 8–9.) The Court declines to do so. *See, e.g.*, *Corral v. Staples Off. Superstore LLC*, No. 2:22-cv-01254-MCS-PVC, 2022 U.S. Dist. LEXIS 109084, at *9 n.6 (C.D. Cal. May 9, 2022) (Scarsi, J.) (rejecting similar argument and distinguishing *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 774 n.4 (9th Cir. 2020), on the basis that "the defendant in *Greene* submitted evidence showing the plaintiff's attorney would seek fees in an amount equal to or greater than 25 percent of the underlying amount in controversy"); *Blossom*, 2024 U.S. Dist. LEXIS 29719, at *15 (Scarsi, J.) (citing *Corral*). In any event, even 25–33 percent of a speculative estimate is still speculation.

///

### E. Summary

Defendant has not substantiated the assumptions undergirding its estimates of the amount in controversy. The Court cannot determine that the amount-in-controversy requirement for jurisdiction under CAFA is met. 28 U.S.C. § 1332(d). Remand is warranted. *Id.* § 1447(c).

## IV. CONCLUSION

The Court grants the motion and remands this case to the San Luis Obispo County Superior Court, No. 24CVP-0338. The Court directs the Clerk to effect the remand immediately and close the case.

**IT IS SO ORDERED.**